J. I. CASE THRESHING MACHINE COMPANY, APPELLANT, V. HARI MEYERS ET AL., APPELLEES.

FILED APRIL 4, 1907.    No. 14,715.

1. Contracts: VALIDITY. To avoid a contract on the ground of drunkenness, it is not sufficient that the party was under undue excitement from liquor. It must arise to that degree which may be called excessive drunkenness, where a party is so far deprived of his reason and understanding as to render him incapable of understanding the character and consequence of his act. *Johnson v. Phifer*, 6 Neb. 401, modified.

2. ———: RESCISSION. To avoid a contract on the ground of excessive intoxication, one must rescind the contract within a reasonable time after recovering his senses, or, if he has received no money or property as a consideration therefor, he must, within a reasonable time, disclaim liability thereon.

3. Appeal: JUDICIAL NOTICE: RECORD. Rules of the district court cannot be judicially noticed by this court, and, where any right is claimed under such rules, they must be called to our attention by being embodied in the bill of exceptions.

APPEAL from the district court for Red Willow county: ROBERT C. ORR, JUDGE. *Reversed*.

*W. S. Morlan*, for appellant.

*Starr & Reeder*, contra.

DUFFIE, C.

The appellant brought this action against Hari Meyers and F. H. Bonger upon two promissory notes given in part payment of a threshing machine outfit. The defendants filed separate answers, alleging, as a first defense, that there was misrepresentation on the part of the plaintiff on

the sale of the machine; second, that a chattel mortgage securing these notes was foreclosed, the proceeds of which should have been applied in satisfaction thereof; third, damages for taking the outfit by the plaintiff. Meyers' answer contained a fourth defense—that he was intoxicated when he signed the notes in question. The jury found against the defendant Bonger, and in favor of the defendant Meyers. This is conclusive that all issues in the case were found in favor of the plaintiff, except that Meyers was not liable upon the notes by reason of his intoxication at the time of signing them. The record shows that the threshing machine outfit was sold to the defendant Bonger for the sum of $2,550, for which six notes were given. Meyers signed three of these notes, aggregating $1,200, the remaining notes being signed by Bonger alone, and all secured by chattel mortgage on the threshing outfit. On the failure of Bonger to pay the second and third notes when they matured, the plaintiff elected to treat the entire debt as due. It took possession of the machine under a writ of replevin, foreclosed its mortgage, and the proceeds, being insufficient to satisfy the entire debt, was applied as a partial payment on the notes signed by Bonger. No objection to this application of the proceeds of the foreclosure sale was made by either defendant.

It being settled by the verdict of the jury that there was no defense to the notes, except that of the intoxication of Meyers at the time of signing them, the only question we are called on to determine is the sufficiency of that defense under the evidence and the instruction of the court relating thereto, and its refusal to give instruction No. 1 asked by the plaintiff. This instruction is as follows: "The court instructs the jury that defendant Hari Meyers, among other things, claims he is not liable on the notes sued on in this action, for the reason that he was intoxicated at the time he signed the same. In order to release the defendant Hari Meyers on account of being drunk, you must first find that at the time said Hari Meyers signed the notes sued on he was so drunk as to be deprived of his reason and

understanding. It is not sufficient that he was under the undue excitement of liquor, but such drunkenness, in order to release him in this case, must have been so excessive as to utterly deprive him of his reason and understanding; and, in order to avoid liability on said notes on account of such drunkenness, it was incumbent upon the said Hari Meyers to disclaim within a reasonable time his liability thereon, and to notify the plaintiff of his intention not to pay such notes." The rule of the instruction relating to the degree of drunkenness necessary to release Meyers is the same as announced in *Johnson v. Phifer*, 6 Neb. 401; but, after serious consideration, we have concluded that the rule there approved should be modified, and our law made to conform to the more recent decision of the supreme court of the United States and of many of our sister states. An extended note to *Wright v. Waller*, 127 Ala. 557, 54 L. R. A. 440, shows that the old rule, first established in England, that drunkenness, in order to avoid a contract, must be of such character as to utterly deprive the party of his reason and understanding has, by the modern decisions, been greatly modified, and the more reasonable one adopted that, if a party is so far deprived of his reason and understanding as to render him incapable of comprehending the character and consequence of his act, it is sufficient. *Hawkins v. Bone*, 4 Fost. & Fin. (Eng.) 311; *Bursinger v. Bank of Watertown*, 67 Wis. 75; 58 Am. Rep. 848; *Reynolds v. Waller*, 1 Wash. (Va.) 164; *Birdsong v. Birdsong*, 2 Head. (Tenn.) 289; *Barrett v. Buxton*, 2 Aik. (Vt.) 167, 16 Am. Dec. 691; *Harmon v. Johnston*, 1 MacArth. (D. C.) 139. A contract is an agreement between competent parties, supported by a legal consideration, and there can be no contract in its true sense without a meeting of minds. The parties must have a distinct intention common to both, in order to constitute a contract or agreement. It is evident, therefore, that the minds of the contracting parties must meet, and, if one of them is so weak, unsound or diseased that the party is incapable of understanding the nature and quality

of the act to be performed, or its consequences, he is incompetent to assent to the terms and conditions of the agreement, whether that state of his mind was produced by mental or physical disease or whether it results from intoxication. It seems to us that the true rule is contained in the instructions given by the trial court and approved by the supreme court of the United States in *Johnson v. Harmon,* 94 U. S. 371, to the effect that the defendant must be incapable of understanding the terms and conditions of the contract in order to avoid it, and that to make a deed valid it is not sufficient for the party to know that he was signing a deed of trust on his property, but he must have been in such a condition of mind as to be able to know and understand the terms and conditions of the deed; that it was not necessary, in order to render the deed invalid, that at the time of its execution and acknowledgment he was entirely demented by intoxicating drink, but his act will be rendered invalid if he was in such a condition of mind that he could not comprehend what were the terms and conditions of the instrument. *Johnson v. Phifer, supra,* is modified to conform to these views. That part of the instruction asked by the plaintiff and appellant which required Meyers to disclaim within a reasonable time his liability upon the note and to notify the plaintiff of his intention not to pay it correctly states the law, and, as the court nowhere in its own instructions touched upon that subject, his attention having been called to the matter, he should have formulated an instruction upon that material phase of the case and presented it to the jury.

The record shows that the instruction was "refused because not presented in time," and in the brief and oral argument of the appellee it is claimed that there is a rule of court existing in the district where the case was tried to the effect that "instructions to the jury asked by either party must be submitted to the court as soon after the commencement of the trial as possible, and not later than the beginning of the argument to the jury; provided, that

either party may submit instructions during the argument, or after the close, upon points relating solely to the argument of events happening after its commencement." The bill of exceptions makes no reference to this rule or to any rules of the trial court, and we cannot take judicial notice of rules established by the different district courts of this state. In order to bring them to our attention, they must be embodied in the bill of exceptions certified to this court by the trial judge.

The evidence is clear that Bonger, who is a son-in-law of Meyers, procured him to sign the notes on the afternoon of July 31, 1903. They were signed in the store of W. T. Coleman, who says he noticed no indication of Meyers being intoxicated at that time. Meyers himself testifies that Bonger told him the next day he had signed the notes and wished him to advance the money to pay freight upon the machine, the plaintiff refusing to unload it from the car on which it was shipped until the freight was paid. This Meyers refused to do, and Bonger got other parties to advance the money. Myers' own evidence makes it clear that he had knowledge the next day after the notes were signed, and before the machine had been delivered to Bonger, that he had become liable upon these notes. Notwithstanding this, he took no action to claim exemption from liability, and to give the plaintiff an opportunity to protect itself before delivering the machine. The general rule appears to be that a contract, invalid by reason of the intoxication of one of the parties, may be ratified by him when sober, and, if so ratified, it will be enforced. In *Williams v. Inabnet*, 1 Bail. (S. Car.) 343, it is said: "It is, perhaps, one of the most difficult questions which can be presented to a jury to decide how far the capacity to contract has been destroyed by the too free use of ardent spirits. But too ready an ear should not be lent to such a defense; and, in all cases where the subsequent conduct of the party making it is such as to have the appearance of his having confirmed the contract, the de-

47

fense should not be allowed; for, even if a man be so much intoxicated as not to know what he is doing, yet he may afterwards confirm the contract by his acts. If he does not intend to be bound by it, he should go the instant he is restored to his senses, and return all that he received as a consideration." To the same effect is 1 Daniels, Negotiable Instruments (5th ed.), sec. 215; *Joest v. Williams,* 42 Ind. 565; *Carpenter v. Rodgers,* 61 Mich. 384; *Strickland v. Parlin & Orendorf Co.,* 118 Ga. 213, 44 S. E. 997. If the defendant was so intoxicated as not to understand what he was doing when the notes were signed, he should have disclaimed liability thereon within a reasonable time after recovering his senses, and especially is this true when he had knowledge that the machine had not been delivered to his son-in-law, and while the plaintiff was in position to protect itself by a refusal to make delivery.

Complaint is further made of misconduct of defendants' attorney in his argument to the jury, to which plaintiff excepted. We do not care to quote in this opinion the language used by defendants' attorney, which was manifestly prejudicial, and can only say that the district court should have sustained plaintiff's objections to the argument and should have prevented such a breach of professional conduct. Were it not that the refusal of the court to instruct upon the duty of the defendant to disclaim liability upon the note upon regaining his reason calls for a reversal of the case, we would have no hesitation in reversing it on account of misconduct of defendants' attorney.

We recommend a reversal of the judgment.

By the Court: For the reasons stated in the foregoing opinion, the judgment is reversed and the case remanded.

REVERSED.